NOT FOR PUBLICATION                           [Docket No. 15]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| RAHUL SHAH, M.D., FAAOS on assignment of MARJORIE M., | |
| Plaintiff, | Civil No. 15-8590 (RMB/KMW) |
| v. | **OPINION** |
| HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY, | |
| Defendant. | |

APPEARANCES:

Samuel S. Saltman
Michael Gottlieb
Callagy Law PC
650 From Road
Suite 565
Paramus, NJ 07652
     *Attorneys for Plaintiff*

Michael E. Holzapfel
Becker LLC
Revmont Park North
1151 Broad Street, Suite 112
Shrewsbury, NJ 07702
     *Attorney for Defendant*

**BUMB**, UNITED STATES DISTRICT JUDGE:

     This matter comes before the Court upon the Motion to

Dismiss by Defendant Horizon Blue Cross Blue Shield of New

Jersey (the "Defendant" or "Horizon") [Docket No. 15], seeking

to dismiss the Complaint filed by Plaintiff Rahul Shah, M.D.

(the "Plaintiff" or "Dr. Shah") [Docket No. 1-2].  For the

1

reasons set forth below, the Motion to Dismiss will be granted, in part, and denied, in part.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**[1]

On June 5, 2013, Dr. Shah performed various medical procedures on Marjorie M. (the "Participant").  Complaint ("Compl.") ¶ 5.  Dr. Shah obtained an assignment of benefits from the Participant so that he could bring claims on her behalf under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1002, et seq. ("ERISA").  Compl. ¶ 6.[2]  The assignment of benefits attached to the Complaint, dated April 30, 2014, reads, in relevant part:

> I irrevocably assign to you, my medical provider, all of my rights and benefits under my insurance contract for payment for services rendered to me.  I authorize you to file insurance claims on my behalf for services rendered to me and this specifically includes filing arbitration/litigation in your name on my behalf

_____

[1] The facts recited herein are derived from Plaintiff's Complaint [Docket No. 1-2].  The Court will and must accept Plaintiffs' well-pled allegations as true for purposes of this motion to dismiss.  See Bistrian v. Levi, 696 F.3d 352, 358 n. 1 (3d Cir. 2012).  Additionally, as the Court writes primarily for the parties, it assumes the reader's familiarity with the facts and recites only those relevant to the decision herein.

[2] There is some ambiguity as to when the assignment of benefits was obtained.  Plaintiff attaches a signed assignment of benefits to his Complaint, which is dated April 30, 2014.  Compl. Ex. B.  A letter from Plaintiff's attorney to Horizon's Appeals Department Representative, dated January 23, 2014, also states that Plaintiff has obtained an assignment of benefits.  Compl. Ex. E.  This ambiguity is at the heart of the parties' present dispute.  For the reasons set forth in this Opinion, however, the date on which the assignment was obtained is immaterial to the Court's determination at this stage.

against the PIP carrier/health care carrier. . . . I
authorize and consent to your acting on my behalf in
this regard and in regard to my general health
insurance coverage pursuant to the "benefit denial
appeals process" as set forth in the NJ Administrative
Code.

In the event the insurance carrier responsible for
making medical payments in this matter does not accept
my assignment, or my assignment is challenged or
deemed invalid, I execute this limited/special power
of attorney and appoint and authorize your collection
attorney as my agent and attorney to collect payment
for your medical services directly against the carrier
in this case, in my name, including filing an
arbitration demand or lawsuit.

Compl. Ex. B.

After performing the medical procedures on the Participant,

Dr. Shah filed a Health Insurance Claim Form with Horizon, the

administrator of the Participant's health insurance plan, in the

amount of $316,643.00.  Compl. ¶¶ 7, 13; Compl. Ex. C.

Defendant, however, only paid out a small fraction of these

expenses.  Compl. ¶ 8; Compl. Ex. D.

Dr. Shah, in turn, instituted an administrative appeal with

Horizon, seeking reimbursement in full.  Compl. ¶ 9; Compl.

Ex. E.  On September 26, 2013, Dr. Shah requested that Horizon

reconsider the insurance claim and provide him with information

regarding the Participant's insurance plan.  Compl. Ex. E.

Subsequently, on January 23, 2014, Plaintiff's counsel submitted

a letter to Horizon's Appeal Department Representative as a

"second notice of appeal".  Id.  Plaintiff's counsel explained

that his law firm "represent[s] the provider named above [Dr.

Shah] who has obtained an assignment of benefits from the patient named above [Marjorie M.]." Id. On March 4, 2014, Plaintiff's office followed up with Horizon once again regarding the "formal request for internal appeal/second look". Id. The appeals form submitted with the March 4, 2014 letter indicates on Line 3(a) that an assignment of benefits was enclosed. Id. The Court notes, however, that no attachments to the form were included in Plaintiff's exhibits to his Complaint.

On March 7, 2014, Horizon upheld its original determination and denied Plaintiff's appeal. Id. Horizon explained that the insurance claim was processed correctly on January 17, 2014 and that, "[a]fter further review, it has been determined that [its] records indicate that this is a duplicate of another service processed under this or another claim." Id.

Plaintiff then filed a complaint against Horizon in Cumberland County Superior Court, alleging four counts: (1) breach of contract; (2) failure to make payments under ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B); (3) breach of fiduciary duty under ERISA, 29 U.S.C. §§ 1132(a)(3), 1104(a)(1), 1105(a); and (4) failure to establish and maintain reasonable claims procedures under 29 C.F.R. 2560.503-1, the regulation applicable to ERISA Section 503, 29 U.S.C. § 1133. Defendant removed the action to federal court on December 12, 2015 on the basis of federal question jurisdiction.

Pursuant to this Court's individual Rules and Procedures, on January 8, 2016, Defendant filed a letter indicating its intention to file a motion to dismiss Plaintiff's Complaint and setting forth its arguments in support of that proposed motion [Docket No. 12].  In response, Plaintiff conceded that his breach of contract claim was preempted by his ERISA claims and agreed to voluntarily withdraw that claim [Docket No. 13].  On January 19, 2016, Defendant filed the instant Motion to Dismiss, seeking the dismissal of Plaintiff's remaining claims [Docket No. 15].

## II.  MOTION TO DISMISS STANDARD

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6),[3] "a complaint must contain sufficient

---

[3] Defendant challenges Plaintiff's standing to bring this action.  A challenge to standing is typically brought as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1).  Constitution Party of Pennsylvania v. Aichele, 757 F.3d 347, 357 (3d Cir. 2014).  The Third Circuit, however, recently held that a challenge to derivative standing, like the one here, "involves a merits-based determination" and is, therefore, non-jurisdictional and properly brought under Rule 12(b)(6).  N. Jersey Brain & Spine Ctr. v. Aetna, Inc., 801 F.3d 369, 371 (3d Cir. 2015) ("NJBSC").

Additionally, Defendant's motion is considered a "facial attack" because, as the parties agree, the motion "seeks dismissal based solely on the four corners of the complaint and the centerpiece document referenced therein."  Defendant's Brief in Support of Motion to Dismiss ("Def. Br.") at 9 n. 1 [Docket No. 15-1]; Plaintiff's Brief in Opposition to Motion to Dismiss (Pl. Opp. Br.") at 3 n. 1 [Docket No. 19].  Accordingly, the motion must be reviewed under the same standard as a motion to dismiss under Rule 12(b)(6).  Aichele, 757 F.3d at 358.

factual matter, accepted as true, to 'state a claim to relief

that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S.

662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550

U.S. 544, 570 (2007)).  "A claim has facial plausibility when

the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for

the misconduct alleged."  Id. at 663.  "[A]n unadorned, the

defendant-unlawfully-harmed me accusation" does not suffice to

survive a motion to dismiss.  Id. at 678.  "[A] plaintiff's

obligation to provide the 'grounds' of his 'entitle[ment] to

relief' requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will

not do."  Twombly, 550 U.S. at 555 (quoting Papasan v. Allain,

478 U.S. 265, 286 (1986)).

In reviewing a plaintiff's allegations, a district should

conduct a three-part analysis:

> First, the court must take note of the elements a
> plaintiff must plead to state a claim.  Second, the
> court should identify allegations that, because they
> are no more than conclusions, are not entitled to the
> assumption of truth.  Third, when there are well-
> pleaded factual allegations, a court should assume
> their veracity and then determine whether they
> plausibly give rise to an entitlement for relief.

Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011 (internal

citations, quotations, and modifications omitted) (quoting

Iqbal, 556 U.S. at 675, 679).

Rule 12(b)(6) requires the district court to "accept as true all well-pled factual allegations as well as all reasonable inferences that can be drawn from them, and construe those allegations in the light most favorable to the plaintiff." Bistrian, 696 F.3d at 358 n. 1.  Only the allegations in the complaint and "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case" are taken into consideration.  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994) (citing Chester Cty. Intermediate Unit. v. Pennsylvania Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990)).  A court may also "consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

## III. LEGAL ANALYSIS

As a preliminary matter, the Court notes that Plaintiff's breach of contract claim (Count One) is dismissed with prejudice, per Plaintiff's concession that it is preempted by ERISA § 514.  The parties, following the Court's directive, did not submit briefing on this claim.  See 1/19/2016 Text Order [Docket No. 14].

7

Defendant seeks the dismissal of Plaintiff's remaining claims on various grounds.  First, Defendant contends that Plaintiff's entire Complaint must be dismissed with prejudice because Plaintiff did not possess a valid assignment of benefits from the Participant during the administrative appeals process and, therefore, as a matter of law, does not have standing to standing to pursue this action.

In the alternative, Defendant urges the Court to dismiss Counts Three and Four, which allege breach of fiduciary duty under ERISA and failure to establish and maintain reasonable claims procedures under ERISA's claims management regulations, respectively, for separate reasons.  Defendants first argue that both of these claims are beyond the scope of the Plaintiff's assignment of benefits and, therefore, cannot be properly pursued by Dr. Shah.  Next, Defendant seeks the dismissal of Plaintiff's ERISA fiduciary duty claim because the statute only permits equitable relief, but Plaintiff seeks only legal relief. Defendant also argues that the fiduciary duty claim must be dismissed as duplicative of Count Two, which alleges a failure to make all payments under ERISA.  Finally, Defendant contends that Plaintiff's claims management regulation claim, set forth in Count Four, fails because the regulation does not give rise to a private cause of action.

The Court will address each of these points in turn.

A.  <u>**Standing**</u>

Generally, a civil action under ERISA may only be brought "by a participant or beneficiary" of the ERISA plan administered by the defendant.  29 U.S.C. § 1132(a).  A medical provider, however, can gain derivative standing to pursue certain ERISA claims on behalf of a plan participant when the plan participant, i.e. the patient, assigns such rights and benefits to the provider.  <u>CardioNet, Inc. v. Cigna Health Corp.</u>, 751 F.3d 165, 176 n. 10 (3d Cir. 2014) ("[T]he ability of providers to bring properly assigned ERISA claims is squarely before us.  We adopt the majority position that health care providers may obtain standing to sue by assignment from a plan participant."); <u>see also</u> <u>NJBSC</u>, 801 F.3d at 372-73.  "In determining what claims a healthcare provider may bring under ERISA, courts look to the language of the assignment."  <u>Ctr. for Orthopedics & Sports Med. v. Horizon</u>, 2015 WL 5770385, at *4 (D.N.J. Sept. 30, 2015) (collecting cases).

Additionally, before bringing an ERISA action, a plaintiff must first exhaust the administrative remedies available under the plan.  <u>Weldon v. Kraft Inc.</u>, 896 F.2d 793, 800 (3d Cir. 1990) ("Except in limited circumstances that are not alleged here, a federal court will not entertain an ERISA claim unless the plaintiff has exhausted the remedies available under the

plan.") (citing Wolf v. Nat'l Shopmen Pension Fund, 728 F.2d 182, 185 (3d Cir. 1984)).

Defendant claims that because the assignment of benefits attached to the Complaint indicates that it was obtained on April 30, 2014, after the administrative process was complete, Plaintiff does not have standing to bring this action as "he never had standing to seek review [of the claim's denial] in the first place." Defendant's Reply Brief in Support of Motion to Dismiss ("Def. Reply Br.") at 3 [Docket No. 20]. Plaintiff apparently does not dispute when the assignment was made, but rather argues that "Horizon creates a rule here from whole cloth." Pl. Opp. Br. at 4. In Plaintiff's view, the date on which he obtained the assignment of benefits from the Participant is irrelevant. For the following reasons, at this stage in the litigation, the Court agrees and finds Defendant's argument to be premature and unpersuasive.

Defendant relies primarily upon three district court opinions in support of its position that Plaintiff's failure to obtain an assignment of benefits from the Participant before or during the administrative appeals process is fatal to his case: Center for Orthopedics & Sports Medicine v. Horizon, 2015 WL 5770385 (D.N.J. Sept. 30, 2015); Innova Hospital San Antonio, L.P. v. Blue Cross & Blue Shield of Georgia, Inc., 995 F. Supp. 2d 587 (N.D. Tex. 2014); and Loretto Hospital v. Local 100-A

Health & Welfare Fund, 1998 WL 852878 (N.D. Ill. Dec. 4, 1998).
These cases, in Defendant's view, "suggest[] that an out-of-
network provider cannot use an assignment of benefits as the
basis for asserting derivative standing where the plan
administrator could not review the assignment when it began the
claims review process." Def. Br. at 8. Such a rule, Defendant
contends, "is consistent with the general principle that ERISA
enforcement actions are to be tried on the record made before
the plan administrator, and cannot be supplemented during
litigation." Id. at 9 (citing Mitchell v. Eastman Kodak Co.,
113 F.3d 433, 440 (3d Cir. 1997)).

     As a preliminary matter, the Court notes that none of these
cases are binding upon this Court. All are district court
opinions. Two are not even from within the Third Circuit. More
importantly, the cases cited by Defendant do not stand for the
proposition that, as a matter of law, a plaintiff medical
provider must have an assignment of benefits from the plan
participant during the administrative appeals process in order
to have standing to pursue ERISA claims in federal court.

     The discussion of the assignment of benefits in Loretto,
for example, turns not on the timing of the assignment, but on
the validity of the assignment, given that it was executed not
by the plan participant, but by his brother. 1998 WL 852878, at
*1-2. The court noted that, "[u]nder Illinois law, an

assignment exists if the surrounding circumstances and the parties' actions support a finding that the parties intended to create an assignment." Id. at *2. Accordingly, the court found that the assignment was valid because, "although Villasenor [the plan participant] did not personally execute the assignment of benefits form, it is undisputed that Villasenor and Loretto Hospital acted with the understanding that Villasenor had assigned his claim to Loretto Hospital." Id.

Additionally, the defendant in Loretto failed to provide the assignee medical provider with certain documents before the assignee submitted documentation verifying that it was the participant's assignee. The Loretto court noted that, while the defendant's failure to comply with Section 1132(c)(1) of ERISA was not willful and did not warrant sanctions, it nonetheless "does not condone the Fund's failure to comply." Id. at *11. If this suggests anything relevant to the case at bar, it is that a plaintiff's failure to provide definitive proof of the existence of a valid assignment does not necessarily excuse a defendant's obligation to comply with ERISA.

In Innova, the district court held that plaintiffs, two hospitals, had adequately alleged standing as assignees of the plan participant by pleading that "they required all patients to 'execute an assignment of benefits form prior to receiving healthcare services,' and that Plaintiffs received an assignment

12

of benefits from the patients."  995 F. Supp. 2d at 599.  <u>Innova</u>
is silent about whether an assignment obtained later in the
process, or one that was not formalized until after the
completion of the administrative process, is sufficient to
confer standing upon a medical provider as an assignee.

Finally, <u>Center for Orthopedics</u>, too, is distinguishable.
In <u>Center for Orthopedics</u>, the plaintiff obtained an assignment
of benefits from the plan participant prior to rendering medical
services, which assigned a certain set of rights and benefits
relating to his insurance policy.  2015 WL 5770385, at *1.  The
assignee medical provider participated in the administrative
appeals process after the claim for reimbursement was partially
denied, deriving standing from the original assignment of
benefits.  At some point during the appeals process, however,
plaintiff and the participant executed a second assignment of
benefits, which assigned a broader array of rights and benefits
to the medical provider.  <u>Id.</u> at *2.  In deciding cross-motions
for summary judgment, the district court held that the plaintiff
had derivative standing to pursue its ERISA claims pursuant to
the first assignment of benefits.  <u>Id.</u> at *5.  It noted,
however, that it would not permit plaintiff to use the second,
broader assignment as the basis for derivative standing because
the defendant "Horizon could not consider it at the time it
began to review its claim."  <u>Id.</u> at *5 n. 6 (citing <u>Loretto</u>,

13

1998 WL 852878, at *1).  The broader assignment could have altered the defendant's understanding of the rights and benefits assigned and, therefore, impacted the plan administrator's determination regarding reimbursement of the claim at issue.

There is no allegation here that the scope of Plaintiff's assignment of rights and benefits from the Participant was in flux or even at issue during the administrative proceedings. The Complaint and the exhibits submitted therewith indicate that Defendant never contested the validity or scope of Plaintiff's assignment during the administrative proceedings, instead saving the issue for the instant federal litigation.  In fact, Plaintiff's claim for reimbursement was denied for reasons wholly unrelated to the timing, validity, or scope of the assignment of benefits.

The Court is persuaded instead by the district court's recent decision Drzala v. Horizon Blue Cross Blue Shield, 2016 WL 2932545 (D.N.J. May 18, 2016), addressing a case that is both factually and procedurally similar to this action.[4]  The defendant in Drzala also moved to dismiss the plaintiff's ERISA action, arguing, in part, that the plaintiff did not have

---

[4] The similarities do not end there.  The Court notes that the defendant in Drzala is also the Defendant in this action -- Horizon Blue Cross Blue Shield of New Jersey.  Additionally, the attorneys representing Plaintiff and Defendant in this action also represent the plaintiff and defendant, respectively, in the Drzala matter.  See Civil Action No. 15-8392.

derivative standing to pursue the ERISA claims as assignee of the plan participant because the assignment was made after the claims review process began.  Id. at *4 n. 7.  The Drzala court rejected the defendant's argument at this procedural posture:

> Here, Defendant Horizon alleges that the assignment, while made prior to the onset of litigation, was nonetheless too late since the administrative appeals process had already concluded.  The Court does not find this argument persuasive.  Defendant Horizon cites to Judge Hayden's opinion in Center for Orthopedics & Sports Medicine v. Horizon in support of its argument.  However, in Center for Orthopedics & Sports Medicine, the case was denied at the summary judgment stage.  The Court will therefore deny the motions without prejudice, so the parties can raise the issue of the timing of the assignment at the summary judgment stage.  The Court notes that Horizon has not shown that it was materially prejudiced by the timing of the assignment, other than to claim so in a conclusory fashion.  Based on the documents reviewed by the Court in relation to the current motion, there does not appear to have been any material prejudice to either [defendant] based on the timing of this assignment because Plaintiff Drzala was actively involved in the process from the outset.

Id. (internal citations omitted).  This Court finds this reasoning not only persuasive, but directly on point to the instant dispute and, accordingly, adopts it.

Without more, such as evidence of material prejudice to the Defendant, the mere timing of the assignments of benefits appears to be irrelevant to the Court's inquiry.  See id. (noting that defendant has not shown that it was "materially prejudiced by the timing of the assignment").  Likewise, in In re Merck & Co., Inc. Securities, Derivative & ERISA Litigation,

the district court refused to "reject the post-filing assignments as insufficient" because such a rule "appears to elevate technicalities over substance." 2015 WL 3823912, at *3 (D.N.J. June 19, 2015). The court explained that an assignment obtained from defendant's shareholders after the filing of this derivative action was sufficient to confer standing because "[t]here is no question, now or at the commencement of this suit, of a real loss to those shareholders allegedly caused by Merck's misconduct. . . . There is also no question that the real parties in interest when the suit was filed have since authorized the Challenged Plaintiffs to pursue this lawsuit on their behalf." Id. at *3. The court further found that the assignment "would not materially change the claims or the nature of this suit" and that "Defendants face no prejudice, whereas the consequence to the Challenged Plaintiffs, and more specifically, to the shareholders on whose behalf they initiated suit, would be severe if the claims were terminated." Id. at *5.

Even assuming that Plaintiff obtained the assignment of benefits from the Participant after the administrative appeals process concluded, the Court, at this stage, sees no prejudice to Defendant. The scope of Plaintiff's assignment was never questioned or even mentioned during the administrative proceedings. Plaintiff's claim for reimbursement was not denied

because of anything related to the validity or scope of the
Participant's assignment of her rights and benefits to Dr. Shah,
making Center for Orthopedics inapposite, in this respect.
Rather, the claim was denied on appeal because "the claim was
processed correctly" and because Defendant determined that the
services underlying Plaintiff's claim were "duplicate[s] of
another service processed under this or another claim."
3/7/2014 Letter, Compl. Ex. E.

     At this juncture, the Court finds that Plaintiff has
adequately pled that he has standing to pursue this action as an
assignee of the Participant's rights and benefits under her
ERISA plan.  Plaintiff alleges that he had a valid assignment of
the Participant's rights and benefits under her health insurance
policy and that he participated fully in the administrative
process.  Plaintiff has provided a copy of the formal executed
assignment with the Complaint to substantiate the assignment.
Accordingly, at this early stage in the litigation, Defendant's
challenge to Plaintiff's standing must and will be denied
without prejudice.  The parties may raise the issue of the
timing of the assignment at the summary judgment stage, if
appropriate.

     **B.   Scope of the Assignment**

     Defendant next argues that the Participant only assigned
her right to recover payment for medical services rendered and,

17

therefore, Plaintiff's claims alleging breach of fiduciary duty
and violation of ERISA's claims management regulations are
beyond the scope of the assignment.  For the foregoing reasons,
the Court finds that the Plaintiff has established, for purposes
of this motion to dismiss, that his assignment of benefits
encompasses his claims for breach of fiduciary duty and
violation of 29 C.F.R. § 2560.503-1.

In CardioNet, the Third Circuit addressed, for the first
time, "the ability of providers to bring properly assigned ERISA
claims."  751 F.3d at 176 n. 10.  In doing so, the Third Circuit
"adopt[ed] the majority position that health care providers may
obtain standing to sue by assignment from a plan participant."
Id.

The assignment at issue in CardioNet conferred upon the
health care provider plaintiffs "all of [participants'] rights
(without limitation) under the Employment Retirement Income
Security Act of 1974 (ERISA) . . . along with any other rights
under federal or state law that [they] may have as related to
the reimbursement of coverage for the uncovered treatment."  Id.
at 170.  Based upon the rights and benefits assigned, the
CardioNet plaintiffs brought an ERISA action seeking the
recovery of benefits under ERISA Section 502 and an injunction
pursuant to Section 502(a)(3), alleging breaches of fiduciary
duty.  Id.  In light of the broad language of the plaintiffs'

assignment, the Third Circuit held that the health care provider
plaintiffs "now stand in the shoes of the Participants, and have
'standing to <u>assert whatever rights the assignor[s] possessed</u>.'"
<u>Id.</u> at 178 (emphasis in original) (quoting <u>Misic v. Bldg. Serv.</u>
<u>Emp. Health & Welfare Trust</u>, 789 F.2d 1374, 1478 n. 4 (9th Cir.
1986)).

The Third Circuit had occasion to further address the issue
of derivative standing in the ERISA context in <u>NJBSC</u>.  In <u>NJBSC</u>,
however, The Third Circuit was faced with a much narrower
assignment of benefits.  The plan participant only assigned to
the health care provider plaintiff "all payments for medical
services rendered to myself or my defendants," but did not
explicitly assign the concomitant legal right to sue to recover
such payments.  801 F.3d at 370-71.  The Third Circuit held that
"when a patient assigns payment of insurance benefits to a
healthcare provider, that provider gains standing to sue for
that payment under ERISA § 502(a).  An assignment of the right
to payment logically entails the right to sue for non-payment."
<u>Id.</u> at 372.

Defendant relies heavily upon the Third Circuit's holding
in <u>NJBSC</u>, employing strategically added emphasis to argue that
"the Third Circuit was also careful to limit its holding to
benefit-recovery actions only. . . . The Court of Appeals did
not extend its holding to non-benefit related actions for

declaratory, equitable, or penal remedies premised on things
like breach of fiduciary duty or regulatory violations." Def.
Br. at 11.  Defendant misses the point.  NJBSC only addressed
assignments of the right to payment alone and held that such an
assignment naturally includes a right to sue for payment, even
if that right is not explicitly assigned.  801 F.3d at 372.  The
NJBSC court distinguished the issue before it and, accordingly,
its holding from that in CardioNet:

> NJBSC claims we held in CardioNet that a provider with
> derivative standing may assert "whatever right the
> assignor[s] possessed."  But that statement applied to
> the CardioNet plaintiffs specifically, not provider-
> assignees generally.  The assignment at issue in
> CardioNet expressly included 'all . . . rights
> (without limitation) under [ERISA] . . . along with
> any other rights under federal or state law that
> [they] may have as related to the reimbursement of
> coverage for the uncovered treatment.'  The
> assignments here do not contain such limitless
> language.

Id. at 372 n. 4. (internal citations omitted) (quoting
CardioNet, 751 F.3d at 178).  NJBSC addressed derivative
standing to pursue an ERISA action to recover payments because
that was the only ERISA claim brought by the plaintiff.  Unlike
Dr. Shah, the plaintiff in NJBSC did not assert claims under any
other provisions of ERISA.

In this Court's view, NJBSC does not represent a "limited
holding", as Defendant contends.  Def. Br. at 11.  Rather, the
Third Circuit in NJBSC sought to further "Congress's intent that

ERISA 'protect . . . the interests of participants in employee benefit plans,' and our conviction that the assignment of ERISA claims to providers 'serves the interests of patients by increasing their access to care.'" 801 F.3d at 374 (quoting 29 U.S.C. § 1001(b); CardioNet, 751 F.3d at 179); see also Graden v. Conexant Sys. Inc., 496 F.3d 291, 302 (3d Cir. 2007) ("ERISA's legislative history indicates that its standing requirements should be construed broadly to allow employees to enforce their rights.").

In any case, the language of Plaintiff's assignment from the Participant is not a barebones assignment of the right to payment like the assignment in NJBCS. Rather, like the assignment in CardioNet, it includes "all of [the Participant's] rights and benefits under [her] insurance contract for services rendered to [her]" and authorizes Dr. Shah to act on her behalf "in regard to my general health insurance coverage[.]" Compl. Ex. B (emphasis added).

Following CardioNet and NJBCS, district courts to consider similarly broad assignments have allowed a variety of ERISA claims, not just claims to recover payments, to proceed at least past the pleadings phase. See, e.g., Zapiach v. Horizon Blue Cross Blue Shield of New Jersey, 2016 WL 796891, at *3-4 (D.N.J. Feb. 29, 2016) (considering assignment of "all of my rights and benefits under my insurance contract for payment for services

rendered to me" and denying motion to dismiss non-benefit-
related ERISA claims); Ctr. for Orthopedics, 2015 WL 5770385, at
*5 (finding, at summary judgment, that plaintiff had derivative
standing under assignment of "'RIGHTS AND BENEFITS' . . .
without any limiting language" to pursue claim for statutory
penalties under § 502(c)(1)(B) of ERISA); Spine Surgery
Associates & Discovery Imaging, PC v. INDECS Corp., 50 F. Supp.
3d 647, 654-57 (D.N.J. 2014) (addressing assignment of "any and
all insurance benefits to which [the plan participant] may
otherwise be entitled for services rendered by the provider" and
denying motion to dismiss with regard to various ERISA claims).

    "It is a basic principle of assignment law that an
assignee's rights derive from the assignor.  That is, 'an
assignee of a contract occupies the same legal position under a
contract as did the original contracting party, he or she can
acquire through the assignment no more and no fewer rights than
the assignor had, and cannot recover under the assignment any
more than the assignor could recover.'"  CardioNet, 751 F.3d at
178 (emphasis in original) (quoting 6A C.J.S. Assignments
§ 110).  Accordingly, given the broad, limitless language of the
Participant's assignment to Dr. Shah and assuming the validity
of the assignment, which this Court does at the pleading stage,
Plaintiff "now stand[s] in the shoes of [Marjorie M.], and ha[s]
standing to assert whatever rights [she] possessed."  Id.

(emphasis in original) (internal citations and quotations omitted).  Defendant's Motion to Dismiss will be denied insofar as it seeks the dismissal of Plaintiff's breach of fiduciary duty claim (Count Three) and violation of 29 C.F.R. § 2560.503-1 claim (Count Four) as beyond the scope of the Participant's assignment to Plaintiff.

### C.   <u>Legal Sufficiency of Breach of Fiduciary Duty Claim</u>

Defendant further contends that Plaintiff's breach of fiduciary duty claim (Count Three) must be dismissed because Plaintiff seeks only legal relief, whereas a breach of fiduciary duty claim under ERISA only permits equitable relief. Accordingly, in Defendant's view, the breach of fiduciary duty claim is duplicative of Count Two, which seeks to recover payment under ERISA, and must be dismissed.  For the foregoing reasons, the Court finds this argument to be premature at this early juncture.

Section 502(a)(3) of ERISA, the vehicle for Plaintiff's fiduciary duty claim, is a "general 'catchall' provision[ that] . . . act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." <u>Varity Corp. v. Howe</u>, 516 U.S. 489, 490 (1996).  Therefore, the Supreme Court held, "we should expect that where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for

further equitable relief, in which case such relief normally would not be appropriate." Id. at 515 (internal citations and quotations omitted).

The Court notes, as have many other courts, that "[t]here is a split among circuits and within this district as to the effect of Varity . . . on a plaintiff's ability to simultaneously pursue claims for benefits under § 502(a)(1)(B) and for breach of fiduciary duty under § 502(a)(3)." Beye v. Horizon Blue Cross Blue Shield of N.J., 568 F. Supp. 2d 556, 575 (D.N.J. 2008) (noting also that "[t]he Third Circuit has not expressly addressed this issue"); accord DeVito v. Aetna, Inc., 536 F. Supp. 2d 523, 533–34 (D.N.J. 2008); Bell v. Guardian Life Ins. Co., 2008 WL 4852840, at *4 (D.N.J. Nov. 6, 2008) ("[T]here is much division among the Circuits, as well as in this District, as to the effect of the Varity decision.").

Several courts have found that "Varity does not mandate dismissal of [an ERISA breach of fiduciary] claim at the motion-to-dismiss stage simply because Plaintiff also brought a § 502(a)(1)(B) claim." Martin v. Prudential Ins. Co. of Am., 2013 WL 3354431, at *9 n. 5 (D.N.J. July 2, 2013) (citing Beye, 568 F. Supp. 2d at 574–75); accord Segura v. Dr. Reddy's Labs., Inc., 2012 WL 6772060, at *8 (D.N.J. Dec. 21, 2012) ("At this early stage in the litigation, however, a complaint pleading both wrongful denial of benefits and breach of fiduciary duty is

not duplicative, nor does it require that the Court strike one claim to uphold the other."); Bell, 2008 WL 4852840, at *4 ("Neither the Supreme Court nor the Third Circuit has held that the decision in Varity requires that a plaintiff's claim under § 502(a)(3) be dismissed whenever a plaintiff also asserts a claim for relief under § 502(a)(1)(B)."); but see Cohen v. Indep. Blue Cross, 820 F. Supp. 2d 594, 608 (D.N.J. 2011) (granting motion to dismiss ERISA breach of fiduciary duty claim because it was "impermissibly duplicative" ERISA benefit claim); Zahl v. Cigna Corp., 2010 WL 1372318, at *4 (D.N.J. Mar. 31, 2010) (same).

Accordingly, "Varity does not create a bright-line rule precluding the assertion of alternative claims under §§ 502(a)(1)(B) and 502(a)(3) at the motion to dismiss stage." Lipstein v. United Healthcare Ins. Co., 2011 WL 5881925, at *3 (D.N.J. Nov. 22, 2011); accord Beye, 568 F. Supp. 2d at 574–75 ("Several cases in this circuit have concluded that claims under § 1132(a)(3) are not properly dismissed at the motion to dismiss stage merely because a plaintiff has also brought a claim under § 1132(a)(1)(B).") (collecting cases); DeVito, 536 F. Supp. 2d at 533–34 (same); Parente v. Bell Atl. Pennsylvania, 2000 WL 419981, at *3 (E.D. Pa. Apr. 18, 2000) (noting that the Supreme Court's statement in Varity that "'there will likely be no need for further equitable relief,' indicates that the Court was not

25

drawing a bright-line rule that a claim for equitable relief under § 1132(a)(3) should be dismissed when a plaintiff also brings [a] claim under § 1132(a)(1)(B).").  Instead, "Varity requires an inquiry into whether 'Congress provided adequate relief for a beneficiary's injury.'"  Parente, 2000 WL 419981, at *3 (quoting Varity, 516 U.S. at 515).

While Plaintiff does not appear to contest that he seeks the same relief under Counts Two and Three, his position is that dismissal is premature "until it can be determined if Plaintiff can and will succeed on claims asserted under § 1132(a)(1)." Pl. Opp. Br. at 7.  The Court agrees.  At the pleadings stage, Plaintiff may "plead alternative causes of action under § 502(a)(1)(B) and § 502(a)(3)." Bell, 2008 WL 4852840, at *4 (citing Parente, 2000 WL 419981, at *3 ("[P]lacing plaintiffs in the predicament of choosing between two valid ERISA claims before they have had the benefit of discovery, and thereby forcing plaintiffs to drop claims that could lead to relief, is not only antithetical to the spirit of liberal pleading rules, it is patently unjust.")).

Nonetheless, "the Court will not permit a § 502(a)(3) claim to duplicate the relief theories of § 502(a)(1)(B) at the appropriate stage of this litigation." Lipstein, 2011 WL 5881925, at *3.  Accordingly, Defendant's Motion to Dismiss Plaintiff's breach of fiduciary duty claim (Count Three) will be

denied without prejudice.[5]  Defendant may, however, raise these
arguments again on summary judgment, as appropriate.  See
Zapiach, 2016 WL 796891, at *4 (denying motion to dismiss
fiduciary duty claim as duplicative, noting that plaintiff
"seems to concede that [fiduciary duty claim does not add
anything to relief sought in claim for benefits], and urges the
Court to leave them intact simply as a vehicle for such relief
as may seem advisable after factual exploration of the claims in
discovery."); Beye, 568 F. Supp. 2d at 575 (denying motion to
dismiss fiduciary duty claim as duplicative, but permitting
challenge to "be renewed in summary judgment after full
discovery"); DeVito, 536 F. Supp. 2d at 534 (same).[6]

------

[5] The Court notes that Defendant fleetingly objects to the
sufficiency of Plaintiff's allegations, observing, in passing,
that "the complaint does not articulate any specifics as to how
Horizon allegedly violated [ERISA Section 404] (contrary to
Iqbal and Twombly) . . . ."  Def. Br. at 13.  Defendant,
however, has provided the Court with no law or argument
regarding whether the pleadings suffice under the requirements
set forth by the Supreme Court in Iqbal and Twombly.  The Court
will not address this superficial argument without the benefit
of proper briefing from the parties.  See United States v.
Marcavage, 609 F.3d 264, 287 (3d Cir. 2010) ("It is not our
practice to make a litigant's case for it . . . .") (citing
United States v. Calderon-Pacheco, 564 F.3d 55, 58 (1st Cir.
2009) ("Courts ought not to be obliged to do a litigant's
homework for him.")).  Accordingly, to the extent Defendant's
motion is premised on an alleged failure to sufficiently plead
the elements of a breach of fiduciary duty claim, the motion is
denied without prejudice.

[6] The Court is not persuaded at this time that Plaintiff's
breach of fiduciary duty claim must fail as a matter of law
because he requests money damages, which are traditionally

**D.**   **Legal Sufficiency of 29 C.F.R. § 2560.503-1 Claim**

Defendant urges the Court to dismiss Count Four of the

Complaint, alleging a failure to establish and maintain

reasonable claims procedures under 29 C.F.R. § 2560.503-1,

_____

described as legal, rather than equitable, relief.  See Mehra v.
Pfizer Ret. Comm., 2013 WL 5288008, at *6 n. 16 (D.N.J. Sept.
17, 2013) ("the fact that Plaintiff's claim for equitable relief
requests money damages does not preclude him from proceeding
under § 502(a)(3).") (citing Ream v. Frey, 107 F.3d 147, 153
n. 3 (3d Cir. 1997)).  In any case, discovery may very well show
that Plaintiff is entitled to "other appropriate equitable
relief," pursuant to § 1132(a)(3), which is generously covered
by Plaintiff's prayer "[f]or such other and further relief as
the Court may deem just and equitable."  Compl. ¶ 40; see
Tannenbaum v. UNUM Life Ins. Co. of Am., 2004 WL 1084658, at *4
(E.D. Pa. Feb. 27, 2004) ("It is too early in these proceedings
to decide whether Plaintiff is contractually entitled to
benefits under the Plan.  If Plaintiff is not entitled to
benefits under the Plan, Plaintiff might still be entitled to
'other appropriate equitable relief' to remedy any breaches of
fiduciary duty by Defendants.").  The Court questions, however,
whether it actually will.  In Drzala, for example, the court
dismissed the fiduciary duty claim, but noted that "[n]ormally,
the Court would not dismiss Count III at this stage, but
Plaintiff's Counsel [Mr. Saltman, who is also counsel for Dr.
Shah in this action] candidly admitted at oral argument that he
could not think of any equitable relief Plaintiff would seek if
successful on this Count."  2016 WL 2932545, at *6; see also
Lipstein v. UnitedHealth Grp., 296 F.R.D. 279, 298-99 (D.N.J.
2013) (dismissing breach of fiduciary duty claim as duplicative
of benefits claim on summary judgment because plaintiffs "have
not distinguished the gravamen of their claim[s] . . . and it is
Plaintiffs' burden to do so in opposition to a motion for
summary judgment.").  Should discovery reveal that Plaintiff is
entitled to no equitable relief, the Court would likely dismiss,
on Defendant's motion, Plaintiff's breach of fiduciary duty
claim both as improperly duplicative of Count Two and for
failure to seek equitable relief.  See Drzala, 2016 WL 2932545,
at *6 (citing Mertens v. Hewitt Associates, 508 U.S. 248, 255-56
(1993) (finding that ERISA § 502(a)(3) only allows for
traditional equitable restitution)).

because this regulation does not create a private right of action.  Defendant argues that, even if this regulation did provide an independent right of action, it does not give rise to a right to monetary damages, which the Plaintiff seeks.  The Court agrees.

The Supreme Court in <u>Massachusetts Mutual Life Insurance Company v. Russell</u> held that "there is really nothing at all in the statutory text [of ERISA] to support the conclusion that such a delay [in violation of 29 C.F.R. § 2560.503-1] gives rise to a private right of action for compensatory or punitive relief."  473 U.S. 134, 144 (1985) (noting also that "[n]othing in the regulations or in the statute, however, expressly provides for a recovery from either the plan itself or from its administrators if greater time is required to determine the merits of an application for benefits [in violation of 29 C.F.R. § 2560.503-1].").  The Third Circuit has reiterated this holding.  <u>See, e.g.</u>, <u>Syed v. Hercules Inc.</u>, 214 F.3d 155, 162 (3d Cir. 2000) ("We have previously held that § 503 [29 U.S.C. § 1133, the statutory provision to which 29 C.F.R. § 2560.503-1 applies] sets forth only the disclosure obligations of 'the Plan' and that it does not establish that those obligations are enforceable through the sanctions of § 502(c).");  <u>Ashenbaugh v. Crucible Inc., 1975 Salaried Ret. Plan</u>, 854 F.2d 1516, 1532 (3d Cir. 1988) ("We note that even if more specific claims of

improper plan administration could be made by the plaintiffs here, it is doubtful that those claims would require reversal of the district court's judgment in light of the general principle that an employer's or plan's failure to comply with ERISA's procedural requirements does not entitle a claimant to a substantive remedy.") (citing Groves v. Modified Retirement Plan, 803 F.2d 109, 118 (3d Cir. 1986)); see also Miller v. Am. Airlines, Inc., 632 F.3d 837, 850-51 (3d Cir. 2011) ("Although § 502 provides the private right of action to bring a claim to recover benefits due, § 503 sets forth the basic requirements governing ERISA plans.").

Recent decisions in this District, faced with similar fact patterns and arguments, have also reached the conclusion that neither Section 503 of ERISA, 29 U.S.C. § 1133, nor its accompanying regulation, 29 C.F.R. § 2560.503-1, gives rise to a private cause of action. See, e.g., Drzala, 2016 WL 2932545, at *6; Galman v. Sysco Food Servs. of Metro New York, LLC, 2016 WL 1047573, at *5 (D.N.J. Mar. 16, 2016) ("Section 503 does not create an independent right of action."); Piscopo v. Pub. Serv. Elec. & Gas Co., 2015 WL 3938925, at *5 (D.N.J. June 25, 2015), aff'd sub nom. Piscopo v. Pub. Serv. Elec. & Gas Co., 2016 WL 3000342 (3d Cir. May 25, 2016) (granting motion to dismiss because "section 503 of ERISA does not confer a private right of

action."); Cohen v. Horizon Blue Cross Blue Shield of New
Jersey, 2013 WL 5780815, at *8–9 (D.N.J. Oct. 25, 2013).

The Cohen court held that, "while complying with § 503 may
be 'probative of whether the decision to deny benefits was
arbitrary and capricious,' § 503 itself does not provide an
independent cause of action."  2013 WL 5780815, at *9 (quoting
Miller, 632 F.3d at 851; citing Blakely v. WSMW Indus., Inc.,
2004 WL 1739717, at *10 (D. Del. July 20, 2004) ("Section 1133,
which mandates certain claims procedures for beneficiaries under
ERISA, does not create a private right of action.")).
Accordingly, the Cohen court dismissed the plaintiffs' Section
503 claim with prejudice.  Id.

Relying largely upon the reasoning in Cohen, the Drzala
court dismissed the plaintiff's 29 C.F.R. § 2560.503-1 claim
with prejudice, finding that the regulation did not provide a
private cause of action.  2016 WL 2932545, at *6.  Although
Massachusetts Mutual and Cohen addressed 29 U.S.C. § 1133,
rather than the applicable regulation at issue here and in
Drzala, the Drzala court noted that "there is no distinction
between ERISA procedures claims brought directly under ERISA
§ 1133 and those brought pursuant to the applicable regulation."
Id. (citing Walter v. Int'l Ass'n of Machinists Pension Fund,
949 F.2d 310, 316 (10th Cir. 1991) (finding that, assuming
defendant violated 29 C.F.R. § 2560.503-1, "ERISA does not

31

provide a private cause of action for damages to compensate a pensioner for delay."); Varney v. Verizon Commc'ns, Inc., 2013 WL 1345211, at *16 (E.D.N.Y. Mar. 1, 2013); Ranke v. Sanofi-Synthelabo, Inc., 2004 WL 2473282, at *7 (E.D. Pa. Nov. 3, 2004), aff'd, 436 F.3d 197 (3d Cir. 2006)).  The Court agrees and holds that 29 C.F.R. § 2560.503-1 does not give rise to a private right of action.

Regardless, ERISA does not provide for a private right of action to recover extra-contractual damages.  Mass. Mut., 473 U.S. at 148 ("In contrast to the repeatedly emphasized purpose to protect contractually defined benefits, there is a stark absence--in the statute itself and in its legislative history--of any reference to an intention to authorize the recovery of extracontractual damages. . . . [N]either the statute nor the legislative history reveals a congressional intent to create a private right of action.") (internal citations and quotations omitted).  Therefore, the damages that Plaintiff requests in this claim "are not available for a violation of 29 C.F.R. § 2560.503-1."  Ctr. for Orthopedics, 2015 WL 5770385, at *4 (citing Mass. Mut., 473 U.S. at 144; Syed, 214 F.3d at 162). Rather, the appropriate remedy for a violation of Section 503 or its applicable regulation, 29 C.F.R. § 2560.503-1, "is to remand to the plan administrator so the claimant gets the benefit of a full and fair review."  Syed, 214 F.3d at 162.

For these reasons, Defendant's Motion to Dismiss
Plaintiff's claim for failure to comply with 29 C.F.R.
§ 2560.503-1 (Count Four) is granted.  Count Four of the
Complaint is, therefore, dismissed with prejudice.[7]

## IV.   CONCLUSION

For the foregoing reasons, the Defendant's Motion to
Dismiss is granted, in part, and denied, in part.  Specifically,
Defendant's Motion is denied without prejudice insofar as it
challenges Plaintiff's standing to pursue this action.
Accordingly, Defendant's Motion is denied without prejudice as
to Plaintiff's claim alleging failure to make all payments
pursuant to member's plan under 29 U.S.C. § 1132(a)(1)(B) (Count
Two).  Likewise, Defendant's Motion is denied without prejudice
as to Plaintiff's breach of fiduciary duty claim under 29 U.S.C.
§ 1132(a)(3), 29 U.S.C. § 1104(a)(1), and 29 U.S.C. § 1105(a)
(Count Three).  Defendant may, however, reargue certain
challenges to Plaintiff's remaining claims, as appropriate, at a
later stage in the litigation.  Defendant's Motion is granted as
to Plaintiff's claim alleging failure to establish/maintain

---

[7] Because the Court finds that 29 C.F.R. § 2560.503-1 does
not create a private cause of action and dismisses this claim
with prejudice on that ground, the Court need not address
Defendant's parenthetical contention that Count Four is alleged
"without any of the supporting detail required by Iqbal or
Twombly."  Def. Br. at 15.

reasonable claims procedures under 29 C.F.R. § 2560.503-1 (Count

Four).   Accordingly, Count Four of the Complaint is dismissed

with prejudice.   Finally, Plaintiff's breach of contract claim

(Count One) dismissed with prejudice as preempted by ERISA, per

Plaintiff's concession.   An appropriate Order shall issue on

this date.


                                        s/Renée Marie Bumb
                                        RENÉE MARIE BUMB
                                        United States District Judge

Dated: August 25, 2016